UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| MICHAEL E. WEAVER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| | ) | |
| v. | ) | No. 3:13-CV-117 |
| | ) | (JORDAN/SHIRLEY) |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

**REPORT AND RECOMMENDATION**

This case is before the undersigned pursuant to 28 U.S.C. § 636(b), Rule 72(b) of the Federal Rules of Civil Procedure, and the Rules of this Court for a report and recommendation regarding disposition by the District Court of the Plaintiff's Motion for Judgment on the Pleadings and Memorandum in Support [Docs. 19, 20] and the Defendant's Motion for Summary Judgment and Memorandum in Support [Docs. 21, 22]. Plaintiff Michael E. Weaver seeks judicial review of the decision of the Administrative Law Judge ("ALJ"), the final decision of the Defendant Carolyn W. Colvin, Acting Commissioner of Social Security ("the Commissioner").

The Plaintiff filed his application for a period of disability and disability insurance benefits under the Act on July 8, 2010, alleging disability since July 3, 2010, due to back pain, dizziness, headaches, and swelling in the lower extremities. His application was denied initially and upon reconsideration. The Plaintiff then requested a hearing, which was held before ALJ James A. Sparks, in Knoxville, Tennessee, on October 24, 2011. The Plaintiff was present and

1

testified. The ALJ issued an unfavorable decision on November 29, 2011, finding the Plaintiff did not have a severe impairment or combination of impairments and was capable of performing basic work-related activities. The Appeals Council denied the Plaintiff's request for review; thus, the decision of the ALJ became the final decision of the Commissioner. The Plaintiff now seeks judicial review of the Commissioner's decision.

## I. ALJ FINDINGS

The ALJ made the following findings:

1. The claimant meets the insured status requirements of the Social Security Act through December, 31, 2015.

2. The claimant has not engaged in substantial gainful activity since July 3, 2010, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).

3. The claimant has the following medically determinable impairments: left eye blindness, mild edema, and back pain (20 CFR 404.1521 *et seq.* and 416.921 *et seq.*).

4. The claimant does not have an impairment of combination of impairments that has significantly limited (or is expected to significantly limit) the ability to perform basic work-related activities for twelve consecutive months; therefore, the claimant does not have a severe impairment or combination of impairments (20 CFR 404.1521 *et seq.* and 416.921 *et seq.*).

5. The claimant has not been under a disability, as defined in the Social Security Act, from July 3, 2010, through the date of this decision (20 CFR 404.1520(c) and 416.920(c)).

[Tr. 15-20].

## II. DISABILITY ELIGIBILITY

To qualify for SSI benefits, the plaintiff must file an application and be an "eligible

individual" as defined in the Act. 42 U.S.C. § 1382(a); 20 C.F.R. § 416.202. An individual is eligible for SSI benefits on the basis of financial need and either age, blindness, or disability. See 42 U.S.C. § 1382(a).

"Disability" is the inability "[t]o engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. 42 U.S.C. § 1382c(a)(3)(B).

Disability is evaluated pursuant to a five-step analysis summarized as follows:

> 1. If claimant is doing substantial gainful activity, he is not disabled.
>
> 2. If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.
>
> 3. If claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.
>
> 4. If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.
>
> 5. Even if claimant's impairment does prevent him from doing his

3

> past relevant work, if other work exists in the national economy
> that accommodates his residual functional capacity and vocational
> factors (age, education, skills, etc.), he is not disabled

Walters v. Comm'r of Soc. Sec., 127 F.3d 525, 529 (6th Cir. 1997) (citing 20 C.F.R. § 404.1520).

The plaintiff bears the burden of proof at the first four steps. Id. The burden shifts to the Commissioner at step five. Id. At the fifth step, the Commissioner must prove that there is work available in the national economy that the claimant could perform. Her v. Comm'r of Soc. Sec., 203 F.3d 388, 391 (6th Cir. 1999) (citing Bowen v. Yuckert, 482 U.S. 137, 146 (1987)).

**III. STANDARD OF REVIEW**

When reviewing the Commissioner's determination of whether an individual is disabled pursuant to 42 U.S.C. § 405(g), the Court is limited to determining "whether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence." Blakley v. Comm'r of Soc. Sec., 581 F.3d 399, 405 (6th Cir. 2009) (citing Key v. Callahan, 109 F.3d 270, 273 (6th Cir. 1997)). If the ALJ applied the correct legal standards and his findings are supported by substantial evidence in the record, his decision is conclusive and must be affirmed. Warner v. Comm'r of Soc. Sec., 375 F.3d 387, 390 (6th Cir. 2004); 42 U.S.C. § 405(g). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Rogers v. Comm'r of Soc. Sec., 486 F.3d 234, 241 (6th Cir. 2007) (quotation omitted); see also Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consol. Edison v. NLRB, 305 U.S. 197, 229 (1938)).

It is immaterial whether the record may also possess substantial evidence to support a different conclusion from that reached by the ALJ, or whether the reviewing judge may have decided the case differently. Crisp v. Sec'y of Health & Human Servs., 790 F.2d 450, 453 n.4 (6th Cir. 1986). The substantial evidence standard is intended to create a "'zone of choice' within which the Commissioner can act, without the fear of court interference." Buxton v. Halter, 246 F.3d 762, 773 (6th Cir. 2001) (quoting Mullen v. Bowen, 800 F.2d 535, 545 (6th Cir. 1986)). Therefore, the Court will not "try the case de novo, nor resolve conflicts in the evidence, nor decide questions of credibility." Walters, 127 F.3d at 528.

In addition to reviewing the ALJ's findings to determine whether they were supported by substantial evidence, the Court also reviews the ALJ's decision to determine whether it was reached through application of the correct legal standards and in accordance with the procedure mandated by the regulations and rulings promulgated by the Commissioner. See Wilson v. Comm'r of Soc. Sec., 378 F.3d 541, 544 (6th Cir. 2004). The Court may, however, decline to reverse and remand the Commissioner's determination if it finds that the ALJ's procedural errors were harmless.

An ALJ's violation of the Social Security Administration's procedural rules is harmless and will not result in reversible error "absent a showing that the claimant has been prejudiced on the merits or deprived of substantial rights because of the [ALJ]'s procedural lapses." Wilson, 378 F.3d at 546-47. Thus, an ALJ's procedural error is harmless if his ultimate decision was supported by substantial evidence *and* the error did not deprive the claimant of an important benefit or safeguard. See id. at 547.

On review, the plaintiff bears the burden of proving his entitlement to benefits. Boyes v.

5

Case 3:13-cv-00117-RLJ-CCS   Document 23   Filed 02/05/14   Page 5 of 16   PageID #: 302

Sec'y. of Health & Human Servs., 46 F.3d 510, 512 (6th Cir. 1994) (citing Halsey v. Richardson, 441 F.2d 1230 (6th Cir. 1971)).

IV.  MEDICAL EVIDENCE

On July 12, 2010, the Plaintiff presented himself to treating physician William Culbert, M.D., complaining that he had been experiencing back pain for the past month. [Tr. 174]. The Plaintiff reported that he does janitorial work and that his employer wanted him to start working the third shift but that he could not switch shifts because he could only stand for six hours at a time. [Id.]. Dr. Culbert noted that there were no signs of significant swelling in the Plaintiff's legs or any unilateral sciatica in the paravertebral area. [Id.]. The Plaintiff gave Dr. Culbert disability paperwork to fill out during the visit, but Dr. Culbert declined, noting that at this point, because it had only been a month since the Plaintiff had been experiencing pain, filling out the paperwork was "probably inappropriate." [Id.]. Instead, Dr. Culbert suggested that the Plaintiff try physical therapy and report back in one month. [Id.]. Dr. Culbert also noted that the Plaintiff experienced blurry vision in his right eye due to an obliterated iris that the Plaintiff was reportedly born with. [Id.]. Dr. Culbert recommended that the Plaintiff follow-up with his optometrist because it had been over a year since his vision had been checked. [Id.]. In addition, Dr. Culbert observed redness in the Plaintiff's lower extremity and swelling of the feet. [Id.].

The Plaintiff returned to Dr. Culbert on August 20, 2010, at which time disability paperwork was completed. [Tr. 197]. Dr. Culbert reported in his treatment notes that the Plaintiff experienced chronic lower back pain, was blind in his left eye, and had difficulty seeing out of his right eye. [Id.]. Dr. Culbert also noted that the Plaintiff experienced some paresthesia

6

in his leg and calf areas, but had no lower extremity lesions or edema, nor did he have pretibial dermopathy. [Id.].

Dr. Culbert then completed a form entitled "Treating Relationship Inquiry," in which he responded to a variety of short answer and multiple-choice questions regarding the Plaintiff's physical limitations. [Tr. 222-25]. Therein, Dr. Culbert noted that the Plaintiff suffered from the following impairments: (1) blindness in his left eye and difficulty with his vision in his right eye; (2) chronic lower back pain; (3) and chronic dizziness. [Tr. 222]. As a result, Dr. Culbert indicated that the Plaintiff could not "be reasonably expected to be reliable in attending an eight hour a day, 40 hour work week, week after week, without missing more than 2 days per month" and would have to take more than three breaks during a workday. [Tr. 222, 225]. In regards to the Plaintiff's exertional limitations, Dr. Culbert opined that in an eight-hour workday, working five days a week, the Plaintiff experienced the following limitations: he could sit for eight hours, stand for around six hours, and walk for about four hours with breaks every hour-and-a-half; he could frequently lift 1-10 pounds, occasionally lift 11-25 pounds, and never lift 50 pounds or more; and he could occasionally bend, stoop, squat, kneel, climb stairs, and crawl and on a frequent basis he could reach above his shoulders, walk on uneven surfaces, and use both hands for manipulation. [Tr. 222-23]. Environmental restrictions placed on the Plaintiff include restrictions against heights, dust, and moving machinery. [Tr. 223]. The Plaintiff was noted to also have problems with stamina and endurance and frequent attacks of balance disturbance due to his prognosis of dizziness. [Tr. 223-24]. Although Dr. Culbert opined that the Plaintiff's condition could reasonably be expected to cause pain, he noted that the Plaintiff's pain level was somewhat moderately severe, but mostly mild. [Tr. 224]. Additionally, the assessment provided

7

that although the Plaintiff suffered from memory problems, it did not affect his ability to do work. [Id.]. Finally, Dr. Culbert noted that while there was some objective evidence supporting his opinion, his opinion was based "mostly" upon subjective evidence. [Tr. 225].

On September 8, 2010, the Plaintiff underwent a consultative examination with Jeffrey Summers, M.D. [Tr. 182-86]. The Plaintiff was found to have "1+ dependent edema present in the lower extremities" and "mild stasis dermatitis noted in both lower extremities." [Tr. 189]. As a result, Dr. Summers opined that it was reasonable to expect that the Plaintiff would have difficult standing and walking for more than 2 hours continuously or more than six hours total during a regular workday. [Tr. 190]. Impairments with the Plaintiff's vision were also noted as the Plaintiff had reported a history of loss of vision in his left eye. [Tr. 190]. During the examination, the Plaintiff's vision was greater than 20/200 in his left eye and 20/30 in his right eye corrected. [Tr. 189, 190]. Based upon the Plaintiff's vision, Dr. Summers stated that the Plaintiff would "have difficult performing activities requiring normal binocular vision and depth of perception," but that he would be able to tolerate all other work activities. [Id.].

Dr. Summers also completed a "Medical Source Statement of Ability to Do work-Related Activities (Physical)" form, in which he opined that during an eight-hour workday, working five days a week, the Plaintiff could sit for four hours a day and stand and walk two hours a day without interruption, and could sit eight hours a day and stand and walk six hours a day total. [Tr. 182-83]. Dr. Summers also opined that despite the Plaintiff's vision, he would have no difficulty avoiding ordinary hazards in the workplace, was capable of reading very small print as well as ordinary newspaper and book print, could view a computer screen, and would be able to tell the difference in shapes and colors of small objects such as nuts and bolts. [Tr. 185].

8

Additionally, the Plaintiff was found capable of performing daily living activities, such as driving, shopping, and preparing simple meals, without assistance. [Tr. 187]. Dr. Summers noted that the foregoing limitations lasted or would last twelve consecutive months. [Tr. 186].[1]

On September 27, 2010, state agency physician James P. Gregory, M.D., opined that the Plaintiff did not have a severe physical impairment or combination of impairments. [Tr. 191]. After reviewing the evidence of record, including Drs. Culbert's and Summers' opinion, Dr. Gregory explained that although the Plaintiff's impairments could reasonably be expected to produce the alleged symptoms, there is no evidence that his impairments were severe. [Tr. 194]. Nor was there any evidence that the Plaintiff suffered from dizziness. [Id.]. Additionally, Dr. Gregory noted that Dr. Summers' opinion was too limiting, opining that the Plaintiff did not have a severe limitation in regard to his vision pursuant to the social security guidelines. [Id.]. On January 24, 2011, Dr. Gregory's opinion was subsequently reviewed and affirmed by another state agency physician. [Tr. 199]. The following month, a case analysis was conducted by a third state agency physician who likewise found that the evidence of record supported Dr. Gregory's determination. [Tr. 201].

Finally, on December 1, 2010, and March 10, 2011, the Plaintiff was treated by the Tennessee Department of Health ("TDH"). [Tr. 203, 209]. In regards to the December visit, the Plaintiff complained of poor circulation and pain in his back. [Tr. 209]. Treatment notes indicated that the Plaintiff had been experiencing back pain for the past two years and that it had progressively gotten worse. [Id.]. During his March visit, the Plaintiff complained of nasal congestion, ear pain, and lower abdomen pain. [Tr. 203]. Treatment notes also indicated that

---

[1] Dr. Summers also indicated that the Plaintiff experienced no limitations in his ability to do the following: climb stairs, ramps ladders or scaffolds, as well as balance, stop, kneel, crouch, and crawl; carry or lift 1-100 pounds; use his hands to reach and his feet to operate foot controls; and no environmental restrictions were noted. [Tr. 182-85].

the Plaintiff had been experiencing dizziness in the mornings. [Id.].

V.  **POSITIONS OF THE PARTIES**

The Plaintiff alleges a single allegation of error: the ALJ erred by failing to find that the Plaintiff had a severe impairment. [Doc. 20 at 2]. The Plaintiff maintains that the regulations instruct that great caution should be exercised by an adjudicator when applying the not severe impairment concept. [Id. at 3 (citing Soc. Sec. Ruling 85-28, 1985 WL 56856, at *4 (1985)]. The Plaintiff essentially argues that the ALJ did not use great care in finding that the Plaintiff's impairments were nonsevere because the ALJ failed to adequately explain his reasoning for assigning no weight to Dr. Culbert's opinion. [Id. at 4-5].

The Commissioner argues [Doc. 22 at 3] that the ALJ's decision at step two of the sequential evaluation, in which he found that the Plaintiff did not have a severe impairment, was supported by substantial evidence. The Commissioner asserts that the ALJ properly addressed and weighed Dr. Culbert's opinion which was inconsistent with the other evidence of record. [Id. at 4]. In addition, the Commissioner maintains that there is no evidence that the Plaintiff's alleged impairments lasted for a continuous period of at least twelve months as required by the regulations. [Id. at 5].

VI.  **ANALYSIS**

As mentioned above, at step two of the sequential evaluation process, "the ALJ must find that the claimant has a severe impairment or impairments" to be found disabled. Farris v. Sec'y of Health & Human Servs., 773 F.2d 85, 88 (6th Cir. 1985); see 20 C.F.R. § 404.1520(a)(4)(ii).

To be a severe, an impairment or combination of impairments must "significantly limit[] your physical or mental ability to do basic work activities." 20 C.F.R. §404.1520(c). "Basic work activities" include:

> (1) Physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling;
> (2) Capacities for seeing, hearing, and speaking;
> (3) Understanding, carrying out, and remembering simple instructions;
> (4) Use of judgment;
> (5) Responding appropriately to supervision, co-workers and usual work situations; and
> (6) Dealing with changes in a routine work setting.

20 C.F.R. 404.1521(b). "[A]n impairment can be considered not severe only if it is a slight abnormality that minimally affects work ability regardless of age, education, and experience." Higgs v. Brown, 880 F.2d 860, 862 (6th Cir. 1988) (citing Farris, 773 F.2d at 90). "Under this standard, the question in the present case is whether there is substantial evidence in the record supporting the ALJ's finding that [the Plaintiff] has only a 'slight' impairment that does not affect his ability to work." Farris, 773 F.2d at 90.

The Plaintiff's argument that the ALJ erred in finding his impairments nonsevere is based upon the ALJ's reasoning for rejecting Dr. Culbert's August 2010 opinion. [Doc. 20 at 4-5]. The ALJ explained the following in rejecting Dr. Culbert's opinion:

> No weight is assigned to the limitations assigned by Dr. Culbert, as it is wholly inconsistent with the claimant's benign clinical examinations, which renders it less persuasive. The possibility always exists that a physician may express an opinion in an effort to assist a patient with whom he or she sympathizes for one reason or another. Another reality, which should be mentioned, is that patients can be quite insistent and demanding in seeking supportive notes or reports from their physicians, who might provide such a note in order to satisfy their patient's request and avoid unnecessary tension. While it is difficult to confirm the presence

> of such motives, they are more likely in situations where the opinion in question departs substantially from the rest of the evidence of record, as in the current case. Regulatory criteria require that impairments must be established by objective medical evidence consisting of signs, symptoms, and laboratory findings, not merely by a claimant's statement of symptoms (20 CFR 404.1508 and 416.908 and Social Security Ruling 96-4p). Conversely, prior to the month the inquiry was completed, Dr. Culbert noted that the claimant had paper work to fill out of social security disability and "at this point probably inappropriate."

[Tr. 18-19]. The ALJ then credited the opinions of the state agency physicians, finding their opinions more consistent with the evidence of record. [Tr. 19]. The Plaintiff maintains that the ALJ did not provide any analysis regarding the Plaintiff's "benign clinical examinations" which include "1+ dependent edema present in the lower extremities, "chronic low back pain with palpation," knee pain, and a "possible previous infarct." [Doc. 20 at 5 (citing Tr. 190, 197, 209)]. As a result, the Plaintiff argues that Dr. Culbert's opinion was assigned no weight without providing good reason. [Id.].

While the regulations provide that a treating physician's opinion regarding the severity of an impairment is entitled to controlling weight when it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case record, 20 C.F.R.§§ 404.1527(c)(2) and 416.927(c)(2), the treating-source rule is not "a procrustean bed, requiring an arbitrary conformity at all times." Friend v. Comm'r of Soc. Sec., 375 F. App'x 543, 551 (6th Cir. 2010) (per curiam). The ultimate decision of disability rests with the ALJ. See King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984); Sullenger v. Comm'r of Soc. Sec., 255 F. App'x 988, 992 (6th Cir. 2007). However, a decision denying benefits "must contain specific reasons for the weight given to the treating source's medical opinion, supported by evidence in the case record, and must be sufficiently specific to make clear

12

to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for the weight." Soc. Sec. Ruling 96-2p, 1996 WL 374188, at *5 (1996).

The Court finds that the ALJ fully and adequately explained his reasoning for according no weight to Dr. Culbert's opinion, and therefore, did not err in finding that the Plaintiff's impairments were not severe. Not only did the ALJ provide good reason for rejecting Dr. Culbert's opinion, but the Court also finds that the ALJ's overall explanation concerning the severity of the Plaintiff's impairments was adequate, detailed, and supported by substantial evidence such that the combination of the Plaintiff's physical examinations and other clinical and diagnostic records demonstrated a lack of significant impairments that would suggest an inability to perform basic work activities.

In regards to the three impairments opined by Dr. Culbert, i.e., chronic dizziness, chronic back pain, and vision problems, the ALJ explained that the evidence of record did not support a finding that any of the impairments were as severe as alleged by Dr. Culbert or the Plaintiff. [Tr. 18]. The ALJ explained that Dr. Culbert's treatment notes were completely void of any complaints that the Plaintiff experienced dizziness and that the March 2011 treatment notes from the TDH provided a single instance where dizziness was reported by the Plaintiff. [Tr. 18, 203]. In regards to the Plaintiff's back pain, the ALJ cited to Dr. Culbert's August 2010 treatment notes in which the Plaintiff was found to have no unilateral sciatica in the paravertebral area. [Tr. 18, 197]. The Court further observes that prior to the August examination and completion of the Treating Relationship Inquiry, the only other time the Plaintiff reported back pain to Dr. Culbert was the preceding month, at which time Dr. Culbert found that filing out disability paperwork was premature. [Tr. 174]. With the addition of one other documented complaint of

13

back pain later in December 2010 when the Plaintiff was seen by the TDH [Tr. 209], the record is void of any evidence substantiating the severity or limiting effect of the Plaintiff's back pain as alleged. In fact, Dr. Culbert even opined that the Plaintiff's pain was mostly mild. [Tr. 224].

In regards to the Plaintiff's vision impairment, the ALJ found that the Plaintiff's condition had a minimal effect on his ability to perform basic work activities. [Tr. 18]. Although Dr. Culbert noted that the Plaintiff was blind in his left eye and had difficulty seeing out of his right eye, neither the assessment nor Dr. Culbert's treatment notes indicated that the Plaintiff experienced any work or daily living limitations as a result. [Tr. 174, 197, 222-25]. The ALJ further cited to the consultative examination, in which Dr. Summers opined that the Plaintiff was able to drive and perform all activities of daily living without assistance, as evidence that the Plaintiff's vision impairment was not severe. [Tr. 18, 188].

The Court further observes that according to Dr. Culbert's own admission, his opinion was mostly supported by subjective evidence. [Tr. 225]. The regulations required that a finding of disability must be supported by some objective evidence and not merely subjective complaints by the Plaintiff. 20 C.F.R. § 404.1508. In light of Dr. Culbert's admission, the ALJ expressed doubts concerning the credibility of Dr. Culbert's opinion when viewed in combination with the evidence discussed above, as well as the fact that one month prior to completing the Treating Relationship Inquiry, Dr. Culbert opined that filling out disability paperwork was inappropriate.

Because the ALJ specifically addressed Dr. Culbert's August 2010 opinion and provided good reason for finding each impairment listed in his opinion nonsevere, the Court cannot agree with the Plaintiff that the ALJ failed to provide adequate reason for assigning no weight to the opinion of the Plaintiff's treating physician.

Nor is the Court persuaded by the Plaintiff's citation to treatment notes documenting edema, a single complaint of knee pain, and a vague reference to "possible infarct" as evidence precluding a finding that the Plaintiff's clinical examinations were "benign." As an initial matter, the Court notes that a diagnosis alone says nothing about the severity of the condition. Higgs, 880 F.2d at 863. While Dr. Summers opined that the Plaintiff had "1+ dependent edema" in his lower extremities, the ALJ found Dr. Summers' conclusion unsupported by the objective medical evidence of record [Tr. 18], and the Plaintiff has not cited any error on the ALJ's part in this respect. Moreover, Dr. Culbert noted that the Plaintiff did not have any lower extremity lesions or edema. [Tr. 197]. Therefore, because substantial evidence supports the ALJ finding that the Plaintiff's edema was not severe, the Court will not disturb the ALJ's conclusion in this regard.

As to the Plaintiff's alleged knee pain and infarct, there is no evidence suggesting the severity, limitation, or affect, if any, either condition had on the Plaintiff. The Plaintiff cites to the December 2010 treatment notes from the TDH at which time he complained of knee pain. [Tr. 209]. The same treatment notes documented the following notation: "EKG-possible previous infarct." [Id.]. It is unclear to the Court whether an EKG was recommended to the Plaintiff or whether the notation was the results of an EKG. Even assuming that infarct was a condition suffered by the Plaintiff, the notation, as well as the Plaintiff's single complaint of knee pain, without more, fails to substantiate the Plaintiff's claim that he suffered from a severe impairment. To the extent that the Plaintiff argues that the ALJ erred by not addressing this particular piece of evidence, the Court finds the Plaintiff's argument unpersuasive. See Thacker v. Comm'r of Soc. Sec., 99 F. App'x 661, 665 (6th Cir. 2004), (holding that "[a]n ALJ need not

15

discuss every piece of evidence in the record for his decision to stand").

Based upon the foregoing, the Court finds that the ALJ provided good reasons for according no weight to Dr. Culbert's opinion and that substantial evidence supports the ALJ's finding that the Plaintiff's impairments were not severe. Therefore, the Plaintiff's arguments are not well-taken.

**VII.  CONCLUSION**

Accordingly, the Court finds that the ALJ properly reviewed and weighed the evidence of record in determining that the Plaintiff does not suffer from a severe impairment or combination of impairments.  Therefore, it is hereby **RECOMMENDED**[1] that Plaintiff's Motion for Judgment on the Pleadings [**Doc. 19**] be **DENIED** and that the Commissioner's Motion for Summary Judgment [**Doc. 21**] be **GRANTED**.

                                      Respectfully submitted,

                                        s/ C. Clifford Shirley, Jr.
                                        United States Magistrate Judge

---

[1] Any objections to this Report and Recommendation must be served and filed within fourteen (14) days after service of a copy of this recommended disposition on the objecting party. Fed. R. Civ. P. 72(b)(2). Such objections must conform to the requirements of Rule 72(b), Federal Rules of Civil Procedure. Failure to file objections within the time specified waives the right to appeal the District Court's order. Thomas v. Arn, 474 U.S. 140, 106 S. Ct. 466 (1985). The district court need not provide de novo review where objections to this report and recommendation are frivolous, conclusive or general. Mira v. Marshall, 806 F.2d 636 (6th Cir. 1986). Only specific objections are reserved for appellate review. Smith v. Detroit Federation of Teachers, 829 F.2d 1370 (6th Cir. 1987).